AMERICAN EXPRESS FINANCIAL ADVISORS, INC., Plaintiff,

v.

Richard ZITO, Defendant.

No. CV 98–4542.

United States District Court, E.D. New York.

April 26, 1999.

Chorpenning Good Carlet & Garrison, by Michael J. Zaretsky, New York City, for plaintiff.

Schupbach, Williams & Pavone, by Paul R. Williams, Garden City, New York, for defendant.

## MEMORANDUM AND ORDER

WEXLER, District Judge.

This is an action for injunctive relief and damages brought by plaintiff American Express Financial Advisors, Inc. ("AEFA") against Defendant Richard Zito ("Zito"), a former financial planner for AEFA. In support of several different causes of action, AEFA alleges, essentially, that Zito has misappropriated confidential information concerning AEFA clients and used that information to the detriment of AEFA. Zito's alleged misappropriation of information stems from the alleged breach of a "Personal Financial Planner's Agreement" executed by Zito while employed as a financial planner for AEFA. In this action, AEFA seeks to enjoin Zito

from the use of the AEFA's information and an order directing that Zito return to AEFA any and all such information. AEFA also seeks compensatory and punitive damages.

AEFA also has pending before this court, under docket number 98-4408, what the parties have referred to as a "companion" case. In that case, AEFA named as the defendant, Douglas Flynn (the "Flynn Action"). Like Zito, Flynn is alleged to have breached the "Financial Planner's Agreement" and misappropriated confidential information belonging to AEFA. Both Flynn and Zito are referred to in the two complaints before this court as AEFA "Financial Planners." It appears, from the allegations of the complaints, that Flynn had seniority over Zito. *See generally* Complaint ¶ 7 (referring to both Flynn and Zito as former financial planners working for AEFA). Nonetheless, it is clear that the two worked together at AEFA and are alleged to be currently working together at a company known as Linsco/Private Ledger. They are alleged to have misappropriated the same confidential information and to have been using that information to the detriment of AEFA.

Both the Flynn Action and this action were commenced by way of Order To Show Cause, within one week of each other, in late June and early July 1998. The Flynn case seeks only injunctive relief while the Zito case, as noted above, seeks injunctive relief and damages. Apparently, AEFA has elected to press its damages case against Flynn in an arbitration now pending before the National Association of Securities Dealers ("NASD").[1] AEFA has neither commenced a separate arbitration case against Zito before the NASD nor joined any claim for money damages against Zito in the NASD arbitration commenced against Flynn.

Presently before the court are the motions of Zito seeking a stay of this action and an order that the damages portion of this case are properly arbitrated before the NASD. If the claims are held not to be arbitrable, Zito seeks a stay of this action pending the outcome of the arbitration against Flynn. Zito also seeks summary judgment on the merits of any claim remaining in this court. In the alternative, Zito seeks a stay of discovery in this action pending the outcome of the Flynn arbitration.

## I. *The Motion For Referral To Arbitration Or Stay Pending The Flynn Arbitration*

Zito argues that the damages claims brought by AEFA are arbitrable before the NASD.[2] Accordingly, Zito seeks a stay of this action and a referral to arbitration pursuant to the Federal Arbitration Act, 9 U.S.C. § 3. In the alternative, Zito seeks a stay of this action pending the outcome of the NASD arbitration brought by AEFA against Flynn.

Although AEFA has readily conceded that any claim for money damages in the Flynn Action must be sought in an NASD arbitration, it argues that its claim for money damages against Zito should be allowed to proceed. Specifically, AEFA argues that its damages case against Zito is not arbitrable. Even if the claims are arbitrable, AEFA states that Zito has waived his right to arbitrate.

### A. *The Claim Of Arbitrability*

Zito's claim that this case should be arbitrated relies on a form, referred to as a "Form U-4," executed by Zito when

---

1. The NASD is a "self-regulatory association of securities firms, operating under the oversight of the Securities and Exchange Commission. The NASD enacts various codes, rules, and forms for its members." *Thomas James Assoc. v. Jameson*, 102 F.3d 60, 62 (2d Cir. 1996).

2. The parties appear to be in agreement that the request for preliminary injunctive relief is properly before this court.

employed by AEFA. The Form U–4 states, in pertinent part, that Zito agrees to "arbitrate any dispute, claim or controversy that may arise between me and [AEFA] that is ... required to be arbitrated under the rules, constitutions, or by-laws of the organization with which I register." Through his form U–4, Zito officially registered with the NASD, so that any rules of that organization became binding on Zito. *See Thomas James Assoc., Inc. v. Jameson,* 102 F.3d 60, 62 (2d Cir.1997). Zito further relies on NASD Rule 10201 providing that:

> [a]ny dispute, claim or controversy eligible for submission under Rule 10100 Series between or among members and/or associated persons, and/or certain others, arising in connection with the business of such member(s), or arising out of the employment or termination of employment of such associated person(s) with such member, shall be arbitrated.

Claims are eligible for submission under "Rule 10100 Series" if they are: (1) between or among members and associated persons or others, and; (2) arise out of the business of any member.

The Second Circuit has interpreted the precise NASD rules upon which the parties rely and has clearly described the two conditions that must be met when determining whether a securities industry dispute is arbitrable. *See McMahan Securities Co. L.P. v. Forum Capital Markets, L.P.,* 35 F.3d 82 (2d Cir.1994). The first condition to be met is whether the parties are "members and/or associated persons, and/or certain others" within the meaning of the NASD rules. *Id.* at 86. Second, the court must determine whether the dispute "arises in connection with the business" of members or arises "in connection with the activities of such associated person(s)." *Id.*

### i. The Parties

There is no dispute that AEFA is a member of the NASD and is therefore a "member" within the meaning of NASD Rule 10201. Resisting arbitration, AEFA argues that Zito is neither an "associated person" nor a "certain other person" within the meaning of the rule and this dispute is therefore, not subject to arbitration.

Associated persons are described as "every sole proprietor, partner, officer, director or branch manager of any member, or any natural person occupying a similar status of performing similar functions, or any natural person engaged in the investment banking or securities business who is directly or indirectly controlled by such member." *McMahan,* 35 F.3d at 86.

 Under this broad definition of associated person, there is no question but that Zito is certainly an "associated person" within the meaning of the NASD Rules. Zito was formerly employed by AEFA and was certainly controlled by AEFA during the time of his employment when he acquired the confidential information regarding AEFA clients. Zito alleges that he continues to be a party subject to arbitration by virtue of the fact that he is currently controlled by Linsco/Private Ledger, a member of the NASD. In any event, Zito's relationship with AEFA is similar to the relationships among the parties in the *McMahan* case where the defendants were accused of stealing confidential information from their former employer. There, as here, there was no question but that the parties were subject to the arbitration provisions of the NASD.

 Even if Zito is not properly characterized as an associated person, he is, at the very least, a "certain other" person within the meaning of the NASD rules. In *Thomas James Associates, Inc. v. Jameson,* 102 F.3d 60 (2d Cir.1996), the Second Circuit held clearly that a former employee of a member is a "certain other" person whose employee-related dispute was an arbitrable dispute within the meaning of the NASD rules. *Id.* at 65.

### ii. The Claims

 Having held that the parties are subject to the arbitration provision of the

NASD rules, the court turns to consider whether the dispute is arbitrable. AEFA charges Zito with misappropriating confidential information belonging to AEFA and using that information in his current investment practice to the detriment of AEFA. It is difficult to imagine any set of facts that could come closer to the facts herein in describing a dispute that arises out of the business of a member in connection with an associated person.

Like the similarity of the parties, the facts herein are similar, in many important ways, to the facts underlying the claims held arbitrable by the Second Circuit in *McMahan*. There, as here, plaintiff claimed, *inter alia*, that the defendants stole plaintiff's trade secrets, including client lists, research material and internal organizational material. *McMahan*, 35 F.3d at 85. As in *McMahan*, the allegations here "plainly arise 'in connection with the business'" of the NASD member. *Id.* at 88.

### B. *Waiver Of Arbitration*

As noted above, AEFA argues that even if the parties and claims are subject to arbitration, Zito has waived his right to seek arbitration of this dispute.

■ At the outset, the court notes that the question of waiver of arbitration, is ordinarily presented as a defense to an arbitrator. Where, as here, the party seeking arbitration has already participated in the litigation, waiver is a matter that may be decided by the district court. *In re S & R Company of Kingston*, 159 F.3d 80, 82–83 (2d Cir.1998).

■ Because federal policy favors arbitration, a waiver of arbitration is not to be lightly inferred. *PPG Industries, Inc. v. Webster Auto Parts Inc.*, 128 F.3d 103, 107 (2d Cir.1997). Generally, a party is deemed to have waived the right to seek arbitration where he "engages in protracted litigation that results in prejudice to the opposing party." *Kingston*, 159 F.3d at 83, quoting, *Leadertex, Inc. v. Morganton*

*Dyeing & Finishing Corp.*, 67 F.3d 20, 25 (2d Cir.1995). Facts to be considered when determining whether a waiver has occurred include: (1) the time elapsed from the commencement of the litigation to the request for arbitration; (2) the amount of litigation (including exchanges of pleadings, and any substantive motions, and discovery), and; (3) proof of prejudice, including taking advantage of pre-trial discovery not available in arbitration, delay and expense. *Kingston*, 159 F.3d at 84.

■ Neither the passage of time, standing alone, nor the incurring of legal expenses inherent in litigation, without more, are sufficient to support a finding of waiver. *PPG Industries*, 128 F.3d at 107–08. In *PPG Industries*, for example, the court held that a five month delay in asserting the right to arbitrate, standing alone, did not require a finding of waiver. *PPG Industries*, 128 F.3d at 108. Instead, the Second Circuit held that any delay must be considered in conjunction with the litigation activity that took place during this time period, along with any proof that the party seeking to avoid arbitration suffered prejudice during this time period. *Id.* at 109. *See also Com–Tech Assocs. v. Computer Associates, Internat'l.*, 938 F.2d 1574, 1576–77 (2d Cir.1991) (waiver of arbitration found where party engaged in expensive pretrial discovery and forced its adversary to respond to substantive motions); *See Zwitserse Maatschappij Van Levensverzekering En Lijfrente v. ABN International Capital Markets Corp.*, 996 F.2d 1478, 1480 (2d Cir.1993) (per curiam) (waiver found where party filed substantive motions and engaged in discovery procedures not available in arbitration).

■ AEFA's claim that Zito has waived the right to arbitrate is based upon Zito's five month delay in asserting the right to arbitrate as well as the pre-trial discovery that has taken place in this matter. AEFA points out that Zito did not allege arbitrability of the parties' dispute as an affirmative defense in his answer and, instead, asserted a counterclaim in this action.

In response to AEFA's claims of waiver, Zito explains the filing of the counterclaim herein by asserting that he had no choice but to file the counterclaim because it is a compulsory counterclaim pursuant to Rule 13(a) of the Federal Rules of Civil Procedure. Moreover, Zito notes that he has taken no discovery in connection with his counterclaim. The only deposition that has taken place has been the deposition of Defendant Zito. Zito has noticed no depositions.

When considering the facts herein and in light of the fact that a waiver of arbitration is not to be lightly inferred, the court holds that Zito has not waived the right to arbitrate AEFA's claim for money damages. As noted by the Second Circuit, the mere passage of time cannot be relied upon as a waiver of the right to arbitrate. On the issue of prejudice, the court finds that AEFA has not demonstrated prejudiced suffered by Zito's delay in seeking arbitration. In fact, AEFA, the party resisting arbitration and, thus, the party who must demonstrate that it will be prejudiced by the arbitration, is the party that has taken advantage of the discovery procedures available in this court. Thus, AEFA has served interrogatories and document requests to which Zito has responded. Although Zito has served a document request, he claims that this request has been limited only to the non-arbitrable injunctive issues.

For the foregoing reasons, the court declines to find a waiver of the right to arbitrate. In accordance with the Federal Arbitration Act, 9 U.S.C. § 3, the court will stay AEFA's money damages claims and allow the parties to continue to litigate only the claims for injunctive relief.

## II. *Summary Judgment*

The court now turns to consider Zito's claim that he is entitled to summary judgment. In light of the foregoing ruling, the court will consider only whether Zito is entitled to summary judgment with regard to AEFA's claim for injunctive relief.

Zito's summary judgment motion is premised on the argument that no question of fact exists concerning the nature of the information provided to Zito by AEFA. According to Zito, the information upon which AEFA premises this lawsuit is not confidential in nature. Therefore, each of AEFA's causes of action must fail. AEFA takes issue with Zito's characterization of the allegedly misappropriated information and has submitted affidavit testimony in support of this position.

■■■ Summary judgment may be granted only if it is demonstrated by the moving party that "there is no genuine issue of any material fact and that the moving party is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see Donahue v. Windsor Locks Bd. Of Fire Commissioners,* 834 F.2d 54, 57 (2d Cir.1987). The parties' differing contentions regarding the nature of the information alleged to have been misused by Zito is clearly a question of material fact precluding the entry of summary judgment. Accordingly, the court denies Zito's motion for summary judgment.

## III. *The Request For A Stay Of The Action and/or A Stay Of Discovery*

In addition to the relief sought above, Zito seeks a stay of this action and/or a stay of discovery. The court has narrowed the issues by limiting the claims before the court to those seeking injunctive relief. In view of the fact that the parties have already been engaging in discovery, the court sees no reason the delay the action by imposing a stay of discovery. Accordingly, the court denies to request to stay discovery. For similar reasons, the court declines to stay this action pending the outcome of either the Flynn or Zito arbitrations.

## CONCLUSION

AEFA's money damages claim is properly decided in the context of an NASD

arbitration. There has been no waiver of the right to arbitrate. The court will therefore stay AEFA's claim for money damages pursuant to 9 U.S.C. § 3. The court denies Zito's motion for summary judgment with regard to the claims for injunctive relief. The court denies Zito's motion to stay this action or to stay discovery pending the outcome of either the Flynn arbitration or Zito's arbitration.

SO ORDERED.